UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUDY OH,

Plaintiff,

v.

HEALTHCARE, INC.,

Defendant.

Case No. 26-cv-04484-JSC

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 14

Plaintiff Judy Oh filed this putative class action against Healthcare, Inc., alleging violations of the California Business & Professions Code, the California Invasion of Privacy Act, and other various California laws arising from a single "deceptive" commercial email Plaintiff received from Defendant on January 13, 2026, and Plaintiff's subsequent visit to the website www.healthcare.com. Defendants move to dismiss for lack of Article III standing and failure to state a claim. (Dkt. No. 14.) After carefully considering the parties' written submissions, and having had the benefit of oral argument on October 29, 2026, the Court GRANTS the motion to dismiss for lack of subject matter jurisdiction. Plaintiff fails to allege a concrete injury for purposes of Article III standing.

**AMENDED COMPLAINT ALLEGATIONS**

Plaintiff alleges she received an unsolicited commercial email from Defendant on January 13, 2026, displaying the sender name "Healthcare.com" and the subject line "See if you're eligible for a 2025 ACA Plans." (Dkt. No. 12 ¶¶ 3, 28.) The visible sender name was paired with the email address 534402549@5i3f.mejagency.com. (*Id.* ¶¶ 4, 29.) Because the email used ACA and eligibility terminology, Plaintiff assumed the email concerned official ACA eligibility, which prompted Plaintiff to open the email and click the link. (*Id.* ¶¶ 5, 33-36.) The email's HTML used

United States District Court
Northern District of California

third-party campaign infrastructure, including digit-4060.oppsandexecution.com, for remote images, an invisible tracking image, and tokenized click URLs. (*Id.* ¶¶ 31, 38-40.) This infrastructure could transmit source IP address, browser or mail-client signaling, timestamps, and campaign- or recipient-linked tokens. (*Id.* ¶¶ 43, 57.)

After Plaintiff clicked the email, she was routed through a tokenized attribution URL before reaching Defendant's website. (*Id.* ¶¶ 44.) Tracking and analytics technology, including Google Analytics, operated on the website and "transmit[ted] identifiers and event data" while she interacted with it. (*Id.* ¶¶ 45–47.) The "non-content source-identifying signals" included "IP address, browser or device characteristics, cookie or client identifiers, timestamps, and referral/campaign identifiers," while purported "content-bearing" fields included "the specific URL or page requested, referral context, page-view or navigation events, and button or link interactions." (*Id.* ¶¶ 46–47.)

These data points allowed Defendant and third parties to associate a browser or device with the fact that it "responded to an ACA eligibility solicitation and entered a health-insurance shopping funnel at a particular time and place." (*Id.* ¶¶ 51–53.) Accordingly, Plaintiff's decision to investigate ACA eligibility or health coverage could have "reveal[ed]" circumstances such as being uninsured, losing coverage, changing jobs, or experiencing a family-status change. (*Id.* ¶¶ 52–53.)

**DISCUSSION**

Federal courts are courts of "limited jurisdiction" which "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Article III of the United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* (citations omitted). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012) (cleaned up).

To establish standing sufficient to satisfy constitutional requirements, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). In a putative class action, at least one named plaintiff must have Article III standing. *See Healy v. Milliman, Inc.*, 164 F.4th 701, 706 (9th Cir. 2026). Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing her standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

A "concrete" injury can include "intangible harms," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425. In *Popa*, the Ninth Circuit addressed Article III standing in privacy cases. *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025). There, the plaintiff alleged the defendant's session-replay technology captured her information while she browsed for pet supplies on a pet supply website. The Ninth Circuit affirmed the district court's dismissal for lack of Article III standing because the nature of the collected information was not "embarrassing, invasive, or otherwise private." *Id.* at 786-87, 791. The court held the plaintiff had not established "how the tracking of her interactions ... caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* at 791. The court explained further "the kind of harm and not the degree" is relevant for determining whether an alleged injury-in-fact is concrete enough relative "to a specific common-law tort" and that the injury must be one "that has traditionally been actionable in our nation's legal system." *Id.*

Here, Plaintiff alleges she received a single "unsolicited commercial email, which consumed her time and attention, burdened her inbox, and caused unwanted processing and network activity." (Dkt. No. 12 ¶ 18.) Plaintiff further alleges that clicking the link in the email caused information about Plaintiff's own device and conduct "to be transmitted to tracking or attribution infrastructure, and her visit to a health-insurance/ACA eligibility funnel was tied to identifiers capable of recognizing her browser or device." (*Id.* ¶ 19.) These conclusory allegations fail to plausibly allege an injury sufficient to establish Article III standing.

First, a single unsolicited commercial email, without more, does not plausibly support an inference of a concrete injury. Plaintiff does not allege *any* facts supporting an inference she suffered actual harm from transmission of the email, including but not limited to calculated time wasted, economic loss, reduced data storage capacity, or diminished network or server functioning. Broad, conclusory allegations regarding one amorphous digital interaction are insufficient. *See Popa*, 153 F.4th at 791.

Second, there are no allegations as to what specific data was collected and/or shared about Plaintiff. *See Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) ("Because the injury depends on the nature of the information at issue, plaintiffs must identify the specific information allegedly disclosed.") (cleaned up); *DellaSala v. Samba TV, Inc.*, No. 25-cv-03470-JSC, 2025 WL 3034069, at *4 (N.D. Cal. Oct. 30, 2025) (explaining because "Plaintiffs' allegations as to what [defendant] actually collects are unclear," the court could not "determine whether Plaintiff[s] ha[ve] a protectable privacy interest in that information.") (cleaned up). Plaintiff must allege what of her own information was actually disclosed to plausibly support a reasonable inference disclosure of such information was offensive. Instead, she merely alleges "identifiers capable of recognizing her browser or device were associated with her visit" to Defendant's website. (Dkt. No. 12 ¶ 19.)

Third, the information Plaintiff alleges the tracking technology collects, to the extent it is alleged at all, does not give rise to a legally protected privacy interest or concrete injury. Courts in the Ninth Circuit have consistently concluded "disclosure of one's … IP address, without more, does not bear similarity to the 'highly offensive' interferences or disclosures that were actionable at common law." *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1144 (E.D. Cal. 2025) (collecting cases similarly reasoning); *see also Carolus v. Nexstar Media Inc.*, No. 24-CV-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (rejecting theory of concrete injury based on a privacy interest in controlling one's personal information when the plaintiffs alleged collection of their IP address because that "only disclose[s] the fact that a given device visited [the] website and the general location of that device, including what zip code it's in ... [defendant's] acquisition of that information does not cause the kind of harm that can be

vindicated in federal court."). A common law intrusion upon seclusion and public disclosure of private facts requires intrusion into "a sensitive sphere." *Popa*, 153 F.4th at 791. And Plaintiff alleges only that visiting an insurance-related page could potentially reveal a consumer is "uninsured, losing coverage, changing jobs, aging into or out of coverage, or experiencing a family-status change," (Dkt. No. 12 ¶ 52), but does not allege she herself has suffered any such circumstance or otherwise disclosed that information to Defendant. Ultimately, Plaintiff alleges only a routine digital interaction and the collection of standard browser metadata and interaction data, as well as speculative conclusions about what such data could reveal, rather than any concrete injury specific to her.

The cases Plaintiff cites to support at least standing for her Cal. Bus. & Prof. Code § 17529.5 claim do not persuade the Court otherwise. *Silverstein v. Keynetics, Inc.*, No. LACV1804100JAKAGRX, 2018 WL 5795776, at *7-10 (C.D. Cal. Nov. 5, 2018), and *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042 (9th Cir. 2017), were decided before *TransUnion*. And in *Lynch v. AML Network Ltd.*, No. CV 21-3574-GW-RAOX, 2021 WL 4453470, at *1 (C.D. Cal. Sept. 27, 2021), the defendant sent the plaintiff over 1,000 spam emails during a two-year period.

## CONCLUSION

In sum, Plaintiff has not alleged facts sufficient to plausibly support an inference she suffered a concrete injury for purposes of Article III standing. Defendants' motion to dismiss for lack of subject matter jurisdiction is therefore GRANTED. If Plaintiff has a good faith basis consistent with Rule 11 for amending her complaint, she may file an amended complaint on or before November 19, 2026. If Plaintiff chooses not to amend her complaint, the action will be dismissed without prejudice to Plaintiff pursuing her claims in state court where there is no Article III standing requirement.

This Order disposes of Docket No. 14.

**IT IS SO ORDERED.**

//

//

United States District Court
Northern District of California

Dated: October 29, 2026

JACQUELINE SCOTT CORLEY
United States District Judge